CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 12 2017

JULIA C. DUDLEY, CLERK
BY: /s/
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Action No. 7:06CR00095 |
| | (Civil Action No. 7:16CV81036) |
| v. | |
| | **MEMORANDUM OPINION** |
| LAWRENCE MCCUTCHEON III, | |
| | By: Hon. Glen E. Conrad |
| Defendant. | Chief United States District Judge |

Defendant Lawrence McCutcheon III, through counsel, has filed a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255. He argues that following Johnson v. United States, 135 S. Ct. 2551 (2015), his sentence for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), is unlawful because he no longer has the requisite number of convictions to support an enhanced sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). The government moved to dismiss, and to hold the case in partial abeyance pending the decision by the United States Court of Appeals for the Fourth Circuit in United States v. Winston, No. 16-7252. The Fourth Circuit has now decided Winston, and so the court will vacate the stay order and expedite consideration of the case. After careful review of the record, and in light of Winston, the court will grant McCutcheon's § 2255 motion, and deny the government's motion to dismiss.

I.

On October 19, 2006, a federal grand jury indicted McCutcheon for: (1) being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1) ("Count One"); possessing unlawfully a stolen firearm, in violation of 18 U.S.C. §§ 922(j) and 924(a)(2) ("Count Two"); and stealing a firearm from a licensed firearm dealer; in violation of 18 U.S.C. §§ 922(u)

and 924(i)(1) ("Count Three"). McCutcheon pleaded guilty, pursuant to a written plea agreement, to Count One.

The Presentence Report ("PSR"), prepared in anticipation of sentencing, recommended a total offense level of 30 because McCutcheon qualified as an armed career criminal under the ACCA, 18 U.S.C. §§ 922(g) and 924(e). PSR ¶¶ 20, 22, ECF No. 68. Without the armed career criminal designation, McCutcheon's total offense level would have been 23. Id. ¶ 19. The PSR listed the following prior felony convictions to support the ACCA enhancement: two 1986 convictions for Maryland storehouse breaking; a 1993 Virginia conviction for breaking and entering; and a 1994 conviction for six counts of Virginia robbery. Id. ¶¶ 30, 31, 34, 35. The PSR recommended a criminal history category of IV, resulting in a guideline imprisonment range of 135 to 168 months. Id. ¶ 76. However, because the ACCA statutory mandatory minimum was 180 months, his advisory guideline range became 180 months. Id. ¶ 77.

The court adopted the PSR recommendation, and sentenced McCutcheon to a total of 180 months' incarceration because he qualified as an armed career criminal. Sent. Hr'g Tr. at 20-21, ECF No. 27. McCutcheon did not appeal. On January 16, 2008, he filed a § 2255 motion, arguing that counsel was ineffective for failing to appeal and to challenge his status as an armed career criminal. After an evidentiary hearing, the district court dismissed McCutcheon's motion. Order at 1, ECF No. 69. McCutcheon appealed, and the Fourth Circuit dismissed. United States v. McCutcheon, 353 F. App'x 812, 813 (4th Cir. 2009) (unpublished).

On September 8, 2015, pursuant to Standing Order 2015-5, the court appointed the Federal Public Defender's Office to represent McCutcheon with regard to any Johnson claims that he might have. On June 20, 2016, he filed a pro se § 2255 motion requesting relief under Johnson. Motion at 1, ECF No. 105. This motion was dismissed as he had not received

2

authorization to file a successive petition. On June 24, 2016, the Fourth Circuit granted McCutcheon permission to file a successive petition, ECF No. 108, and he filed, through counsel, a § 2255 petition asserting that his Virginia robbery and Maryland storehouse breaking convictions can no longer be used to support his ACCA sentence following Johnson, ECF No. 109.

## II.

To state a viable claim for relief in a successive § 2255 motion, a petitioner must establish that he is entitled to relief based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2). McCutcheon bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

### A. The ACCA Enhanced Sentence Structure

McCutcheon challenges his status as an armed career criminal. Federal law prohibits convicted felons from possessing firearms. 18 U.S.C. § 922(g). Defendants who violate this law are subject to a term of up to ten years' imprisonment. 18 U.S.C. § 924(a)(2). However, when defendants convicted of a § 922(g) charge have three or more prior convictions for "serious drug offenses" or "violent felonies," they qualify as armed career criminals under the ACCA. Armed career criminals face an increased punishment: a statutory mandatory minimum of fifteen years' imprisonment and a maximum of life. 18 U.S.C. § 924(e)(1).

In Johnson, the United States Supreme Court invalidated part of the definition of "violent felony" under the ACCA. 135 S. Ct. at 2563. The ACCA defines a "violent felony" as:

> [A]ny crime punishable by imprisonment for a term exceeding one year . . . that —

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B). In Johnson, the Supreme Court reviewed the second part of subsection (ii) of the violent felony definition. It concluded that the clause, known as the "residual clause," which provides, "or otherwise involves conduct that presents a serious potential risk of physical injury to another," was unconstitutionally vague. 135 S. Ct. at 2563. The Supreme Court did not, however, strike down the other portions of the violent felony definition, which includes subsection (i), known as the "force clause," and the first part of subsection (ii), delineating specific crimes, known as the "enumerated crimes clause." Johnson, 135 S. Ct. at 2563 (noting that other than the residual clause, the Court's holding "d[id] not call into question . . . the remainder of the [ACCA's] definition of a violent felony"). Therefore, following Johnson, prior convictions that qualified as "violent felonies" under the residual clause can no longer serve as ACCA predicates. The Supreme Court's decision in Johnson announced a new rule of constitutional law that applies retroactively to cases on collateral review. Welch v. United States, 136 S. Ct. 1257, 1268 (2016). Because the court concludes that McCutcheon is no longer an armed career criminal following Johnson, he is entitled to relief.

### B. Timeliness of Petition

A petition under § 2255 must adhere to strict statute of limitations requirements. Generally, a petitioner must file a § 2255 motion within one year from the date on which his judgment of conviction became final. 28 U.S.C. § 2255(f)(1). However, the statute allows for an additional one-year limitations period from the date on which the United States Supreme

Court recognizes a new right made retroactively applicable on collateral review. Id. at § 2255(f)(3).

McCutcheon filed his § 2255 motion on June 24, 2016, more than one year from the date of his final judgment in 2007. Accordingly, his motion is untimely under § 2255(f)(1). Nonetheless, his petition is timely under § 2255(f)(3) because he filed it within one year of the Supreme Court's decision in Johnson, 135 S. Ct. 2551, which issued on June 26, 2015. United States v. Winston, 850 F.3d 677, 682 (4th Cir. 2017) (holding that a petition was timely under Johnson, when the petitioner established that the sentence received "may have been predicated" on Johnson and therefore, "may be an unlawful sentence"). McCutcheon alleges that his robbery and storehouse burglary convictions no longer qualify as predicates following Johnson. That is enough to satisfy the timeliness requirements. Id.

### C. Procedural Default

McCutcheon did not challenge the constitutionality of the residual clause of the ACCA on direct review, however, he had cause for failing to do so. See generally, Massaro v. United States, 538 U.S. 500, 504 (2003) (noting that claims not raised on direct appeal may generally not be raised on collateral review). An equitable exception to the procedural default rule applies when a petitioner can demonstrate cause and actual prejudice. Bousley v. United States, 523 U.S. 614, 622 (1998). "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999); see also United States v. Pettiford, 612 F.3d 270, 280 (4th Cir. 2010).

Here, McCutcheon can establish cause because of the novelty of his claim. United States v. Brown, 7:12-cr-00026, 2017 WL 76932, *4, 2017 U.S. Dist. LEXIS 1815 (W.D. Va. Jan 6,

2017). The Supreme Court has made clear that when it establishes "a new constitutional rule, representing a clear break with the past," a petitioner may have been justified in failing to raise the issue on direct review. Reed v. Ross, 468 U.S. 1, 17 (1984). Specifically, the Supreme Court has concluded that a petitioner collaterally attacking his conviction and sentence is "sufficiently excus[ed]" from having raised an issue below when one of its decisions either "explicitly overrule[s] one of [its] precedents" or "overturn[s] a longstanding and widespread practice to which th[e] Court has not spoken, but which a near-unanimous body of lower-court authority has expressed approval." Id. (internal quotation marks omitted).

Those exceptions apply to McCutcheon's situation. Well before McCutcheon was sentenced, the Supreme Court had already affirmed the viability of the residual clause. Taylor v. United States, 495 U.S. 575, 597 (1990) (reviewing the legislative history of the ACCA and noting that Congress had a purpose in including each clause of the ACCA and that the residual clause "implied coverage of crimes such as burglary"). In addition, in 1995, the United States Court of Appeals for the Fourth Circuit concluded that the residual clause was not void for vagueness. United States v. Presley, 52 F.3d 64, 68 (4th Cir. 1995). Every other circuit court to consider the issue, both before and after Presley, had come to the same conclusion. See, e.g., United States v. Sorenson, 914 F.2d 173, 175 (9th Cir. 1990); United States v. Veasey, 73 F.3d 363, *2 (6th Cir. 1995) (unpublished); United States v. Childs, 403 F.3d 970, 972 (8th Cir. 2005); United States v. Hart, 674 F.3d 33, 41 n.3 (1st Cir. 2012). Finally, in 2007, the Supreme Court had made a definitive ruling on the issue and explicitly rejected a vagueness challenge to the ACCA's residual clause in James v. United States, 550 U.S. 192, 210 n. 6 (2007) ("[W]e are not persuaded . . . that the residual provision is unconstitutionally vague.").

The recent decision in Johnson expressly overruled James. Johnson, 135 S. Ct. at 2563 ("Our contrary holding[] in James . . . [is] overruled."). Although "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time," this is not such a situation. Bousley, 523 U.S. at 622. Every Court of Appeals to consider the issue had rejected a vagueness challenge to the ACCA's residual clause, creating a longstanding and widespread body of law supporting its constitutionality. Therefore, the court is satisfied that McCutcheon is "sufficiently excus[ed]" from having raised his Johnson claim before the district court at sentencing or on direct appeal. Reed, 468 U.S. at 17.

In addition, McCutcheon has established actual prejudice. Bousley, 523 U.S. at 622. His status as an armed career criminal subjected him to a statutory mandatory minimum sentence of 180 months, a base offense level of 33, and a resulting guideline range of 180 months. PSR ¶¶ 16, 49. Had he not been classified as an armed career criminal, he would have faced a statutory mandatory maximum sentence of 120 months and a guideline range of 37 to 46 months. Therefore, McCutcheon has demonstrated both cause and actual prejudice for his failure to raise a residual clause challenge on direct review; accordingly, the court concludes that his claims are not procedurally defaulted and can be reviewed on the merits.

### D. Predicate Offenses and the ACCA

McCutcheon challenges his status as an armed career criminal. Because the court concludes that Virginia common law robbery and Virginia statutory burglary, Virginia Code § 18.2-91, can no longer be used to support his armed career criminal designation, it concludes that McCutcheon is entitled to relief.[1]

---

[1] McCutcheon also challenges his two Maryland storehouse burglary convictions. Because the court concludes that Virginia robbery and burglary no long qualify as predicate offenses, leaving him with just two Maryland storehouse burglary predicates, it is unnecessary to consider the viability of Maryland storehouse burglary under the ACCA.

1. <u>Virginia Robbery</u>

Virginia robbery can no longer support an armed career criminal designation. The Fourth Circuit has conclusively established that "Virginia common law robbery does not qualify as a violent felony under the ACCA." Winston, 850 F.3d at 679. Therefore, McCutcheon's 1993 conviction for six counts of Virginia robbery cannot be used to support his status as an armed career criminal.

2. <u>Virginia Burglary</u>

In addition, McCutcheon is entitled to relief because his predicate conviction for Virginia burglary also no longer qualifies as a violent felony, making him ineligible for the ACCA enhancement. Brown, 2017 WL 76932, *5-7 (concluding that a Virginia burglary conviction cannot support an ACCA enhancement because the Virginia statute establishes one crime that is broader than generic burglary). In 1993, McCutcheon pleaded guilty to a statutory burglary charge, a violation of Virginia Code § 18.2-91, which provides, "[i]f any person commits any of the acts mentioned in § 18.2-90 with intent to commit larceny, or any felony other than murder, rape, robbery or arson . . . he shall be guilty of statutory burglary." Virginia Code § 18.2-90, in turn, provides the elements of statutory burglary and read at the time of McCutcheon's conviction:

> If any person in the nighttime enters without breaking or in the daytime breaks and enters or enters and conceals himself in a dwelling house or an adjoining, occupied outhouse or in the nighttime enters without breaking or at any time breaks and enters or enters and conceals himself in any office, shop, manufactured home, storehouse, warehouse, banking house, or other house, or any ship, vessel or river craft or any railroad car, or any automobile, truck or trailer, if such automobile, truck or trailer is used as a dwelling or place of human habitation, with intent to commit murder, rape, or robbery, he shall be deemed guilty of statutory burglary . . . .

Va. Code Ann. § 18.2-90 (1992).

Although the ACCA lists burglary as one of the enumerated offenses, a defendant's prior conviction can qualify as a "burglary" under the ACCA only if it was a conviction for "generic burglary." In 1990, the Supreme Court concluded that "regardless of technical definitions and labels under state law," Congress "had in mind a modern 'generic' view of burglary" when it enacted the ACCA. Taylor, 495 U.S. at 589, 590. The Court went on to define generic burglary as: "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." Id. at 598.

There is no question that the Virginia burglary statute defines the crime of burglary more broadly than the generic definition, as the government concedes. This is because the Virginia burglary statute includes entry into locations other than a building or structure, including "any ship, vessel or river craft or any railroad car, or any automobile, truck or trailer, if such automobile, truck or trailer is used as a dwelling or place of human habitation." Va. Code Ann. § 18.2-90; see also Taylor, 495 U.S. at 599 (concluding that a Missouri burglary statute, which similarly criminalized the breaking into places such as boats, vessels and railroad cars, was broader than generic burglary). In addition, the Virginia burglary statute is broader than generic burglary because it allows for a conviction without unlawful entry when a defendant enters "in the nighttime." Va. Code Ann. § 18.2-90; see also Descamps v. United States, 133 S. Ct. 2276, 2282 (2013) (noting that a California burglary statute that does not require unlawful entry, "goes beyond the normal, 'generic' definition of burglary").

In addition, the Virginia burglary statute, § 18.2-90, is indivisible, that is, it "enumerates various factual means of committing a single element" or crime, and does not list multiple crimes. Mathis v. United States, 136 S. Ct. 2243, 2249 (2016); see also Brown, 2017 WL 76932, *5-7. In Graybeal v. Commonwealth, the Virginia Supreme Court made clear that the various

9

locations listed in the Virginia burglary statute provide different means of committing one crime. 324 S.E.2d 698, 699 (Va. 1985). Graybeal was indicted for burglary of an "office or storehouse," but the evidence at trial showed that Graybeal had broken into unoccupied mobile homes and trailers on a mobile home sales lot. Id. The Virginia Supreme Court concluded that the evidence did not establish that Graybeal had burgled an "office or storehouse," as alleged in the indictment. It then went on to consider "whether the evidence provided a violation of any other provision of Code § 18.2-9[0]."[2] Id. The Court determined that the only possible location listed in the statute that Graybeal could have entered was a "trailer" because "[n]one of the other statutory categories plainly, obviously, or rationally applie[d] to the facts." Id. at 700. The Court also concluded that even though the evidence established that the mobile homes Graybeal had broken into qualified as "trailers," the government had not shown that they were currently being used for habitation, an element that must be proved beyond a reasonable doubt to a jury.[3] Id. It seems clear that had the evidence established that the trailer was inhabited, the Supreme Court would have affirmed Graybeal's conviction even though he was not so charged. Because

---

[2] The Graybeal opinion lists the code provision as § 18.2-91. However, this appears to be a typographical error as § 18.2-90 lists the various places in which statutory burglary may occur.

[3] Although Virginia Code § 18.2-90 incorporates an additional proof element for automobiles, trucks or trailers—that they be "used as a dwelling or place of human habitation,"—the court does not conclude that breaking and entering these vehicles comprise a different crime within the statute. Each location will require proof of different facts, a ship will require proof that the premises was a water craft, a store will require proof that it is affixed to realty, etc. But based on Graybeal, it appears that Virginia statutory burglary, no matter where it takes place, comprises one crime. Even if the statute does set forth two locational elements, and therefore two crimes: (1) burglary of places on land, sea and rail, and (2) burglary of automobiles, trucks and trailers used for habitation, neither of those crimes conforms to generic burglary. See United States v. Caberera-Umanzor, 783 F.3d 347, 352 (4th Cir. 2013) ("General divisibility, however, is not enough; a statute is divisible for purposes of applying the modified categorical approach only if at least one of the categories into which the statute may be divided constitutes, by its elements, a crime of violence."); Cf. United States v. Gundy, 842 F.3d 1156, 1168 (11th Cir. 2016) (concluding that the Georgia burglary statute, which includes a habitability requirement for vehicles, establishes a separate element of the offense resulting in divisibility). Generic burglary requires breaking into a building or premises permanently attached to real property, but the first grouping of locations in § 18.2-90 includes water and rail vehicles and the second grouping involves only mobile vehicles. As a result, "no conviction under the law could count as an ACCA predicate." Mathis, 136 S. Ct. at 2249.

the Graybeal Court considered the locations within the statute to be interchangeable, this court concludes that § 18.2-90 provides only one indivisible crime.

Moreover, the Virginia appellate courts have not required that an indictment specify the location of the burglary. To the contrary, they have noted that the Commonwealth can charge a defendant "generally with statutory burglary" without listing specifics. Scott v. Commonwealth, 636 S.E.2d 893, 897 (Va. App. 2006); see also Descamps, 133 S. Ct. at 2290 (noting that "[a] prosecutor charging a violation of a divisible statute must generally select the relevant element from the list of alternatives"); Cf. United States v. Gundy, 842 F.3d 1156, 1167 (11th Cir. 2016) (noting that Georgia courts have consistently held that "the prosecutor must select and identify the relevant statutory locational element" in the indictment).

The statute, itself, reinforces the conclusion that the statute is indivisible. It provides for the same punishments for breaking and entering into all of the listed locations. Cf. Mathis, 135 S. Ct. at 2256 ("If statutory alternatives carry different punishments, then under Apprendi [v. New Jersey, 530 U.S. 466, 490 (2000)] they must be elements"). Moreover, the Virginia statutory scheme codifies generic common law burglary in a separate statute, Virginia Code § 18.2-89, establishing distinct burglary crimes under different code sections.

Therefore, the court concludes that Virginia statutory burglary under § 18.2-90, is both broader than generic burglary and indivisible. Because Virginia statutory burglary cannot qualify as a predicate under the residual clause following Johnson, and because it cannot qualify as a predicate offense under the enumerated crimes clause in light of Mathis and Descamps, it cannot be used to support an armed career criminal designation under the ACCA.

**E. Relief is Appropriate**

11

McCutcheon received a 180-month sentence based on his designation as an armed career criminal. Following <u>Johnson</u>, McCutcheon no longer qualifies for an enhanced sentence under the ACCA. Instead, he is subject to a statutory maximum term of imprisonment of 120 months. Because the sentence imposed is no longer authorized by law, McCutcheon's judgment must be amended. <u>See</u> 28 U.S.C. § 2255(b) ("If the court finds that . . . the sentence imposed was not authorized by law or otherwise open to collateral attack, . . . the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.").

### III.

McCutcheon no longer has three qualifying offenses under the ACCA. Therefore, his enhanced sentence for being an armed career criminal is unlawful and he is entitled to relief. The court will grant McCutcheon's motion to vacate and deny the government's motion to dismiss.

ENTER: This 12th day of April, 2017.

_____
Chief United States District Judge